**DWYER LIGHTERAGE Inc., charterer in possession of THE Grain Barge "C. J. CROSBY", Libellant,**

v.

**UNITED STATES of America, as owner and operator of THE S.S. "MARINE FLASHER", Respondent.**

United States District Court,
S. D. New York.

Aug. 12, 1954.

Macklin, Speer, Hanan & McKernan, New York City, Charles J. Carroll, Jr., New York City, of counsel, for libellant.

J. Edward Lumbard, U. S. Atty., New York City, Gilbert S. Fleischer, Atty., Dept. of Justice, Brooklyn, N. Y., for respondent.

CONGER, District Judge.

Action for damages. The case was tried to the Court without a jury.

Libellant was the charterer in possession of the Grain Barge C. J. Crosby.

The S. S. Marine Flasher was a government owned vessel.

Libellant claims that on April 6, 1949 while the barge was moored outside of the grain elevator America on the south side of Pier 13, Staten Island it was struck and damaged by the S. S. Marine Flasher.

It is not disputed that at the time of the claimed collision there was a heavy fog; that a Liberty ship was moored on the south side of Pier 13; that next to the Liberty ship was the grain elevator America and still outside of the elevator and moored to it was the barge loaded with grain; that the elevator was preparing to transfer the grain from the barge to the Liberty ship; that all three vessels were back of the pierhead line of Pier 13, Staten Island; that the Marine Flasher was in the vicinity apparently lost in the fog, having intended to dock at Pier 16, Staten Island, but having wound up at or near Pier 13; that at a survey had on April 21, 1949 it was found that the barge was damaged in that, among other things, the stern, top plank, the second plank and the third and fourth planks were crushed, broken, bruised and damaged.

Libellant produced two witnesses and the respondent, three, all of whom claimed to be eye-witnesses.

As in many cases of this type, the testimony of each side was at a variance. The stories may not be reconciled. Libellant's witnesses testified the Marine Flasher collided with the stern of the barge. Respondent's witnesses said it did not.

At the close of the trial I called this to the attention of counsel and told them that in as much as the libellant had the burden of proof that I might have to find, the evidence being even, that libellant had not met that burden. This seems to me to be a most unsatisfactory solution, so I have examined and studied and scrutinized the testimony most carefully and have analyzed it with the end in view of ascertaining what the probabilities are. I have finally determined libellant should win. I set forth some of the factors which lead me to this conclusion.

The first thing to find out is whether or not the barge was damaged on the day in question. On this point there was the testimony of the barge Captain and the Superintendent of the elevator ship. Both of them testified that the Marine

Flasher did strike the stern of the barge. The former did not see the actual contact (he was on the bow of the barge) but he saw the Marine Flasher coming in and then felt the force of the blow. The Superintendent of the elevator testified he heard the actual contact and saw it. This latter witness was apparently a disinterested witness. He made a good impression on me. This witness also, on April 6, 1949, made and signed a written statement of the accident. This statement conformed to the story he told on the witness stand.

On the same day the Master of the Marine Flasher questioned the Second Officer as to whether there had been a collision with the barge and obtained a statement from him. The Master at the same time questioned the other members of the crew who had been on the bow. It would appear that some one at least suspected that there had been a collision. It might also indicate that some one was making such a claim.

There are other things which were done at the time which seem natural and probable under the circumstances. The barge Captain's wife was on the barge and just before the contact she jumped off to the elevator. The Superintendent of the elevator testified that he saw the Marine Flasher about 70–80 feet away and when he thought the Marine Flasher was going to hit the elevator he gave orders to his men to slack the lines to reduce the force of the impact and when the Marine Flasher seemed to sheer off a bit and he saw it was going to hit the barge he ordered the barge Captain's wife off the barge. The barge Captain testified when he saw there was to be a collision he slacked off the line running from the barge to the elevator.

The story told generally by the witnesses for respondent is that the Marine Flasher had been anchored off Pier 16, had heaved anchor and started for Pier 16 where she was to be berthed with the assistance of tugs; that apparently due to the heavy fog she brought up in the vicinity of Pier 13; that the Marine Flasher's engines were immediately put astern and the port anchor dropped; that the Marine Flasher came to a stop near the outer end of Pier 13 and at no time did she cross the pierhead line; that at no time did she collide with the barge.

Of course, if the story told by respondent's witnesses is given full credence, then, of course, this collision could not have occurred. There are contradictions, however, which, it seems to me, point the way to the contrary. One of the witnesses for respondent, a sailor on look-out that day on the Marine Flasher, placed the barge outside the pierhead. He disagrees with all the other witnesses.

The story of the Second Officer of the Marine Flasher involves some contradictions. At the trial he testified that the Marine Flasher was anchored 1,000 feet off Pier 16 before it started up that morning but on cross-examination he testified that at a prior occasion, when his deposition was taken, he stated that ship had been anchored 200–300 feet off Pier 16. At the trial he also testified that the Liberty ship was tied up about 15 feet from the head of the Pier, while on his deposition he stated that the Liberty ship was probably 50 feet in front of the pierhead. This witness further testified that the Marine Flasher did not come within 30 feet of the barge and that in his statement to the Master made on the day of the collision he stated this distance was 25–30 feet. He also testified that the barge was inside the stern of the Liberty ship and that if the Marine Flasher came within 25 or 30 feet of the barge the Marine Flasher would be in the slip. The sailor who was in the bow testified that the Marine Flasher came within 15 feet of the barge.

The Captain of the tug that was assisting the Marine Flasher testified that his tug was on the port bow of the Marine Flasher; that he was 35 feet away from the barge when he saw it. His testimony was not too clear on this point. He also stated that he saw only

the shadow of the grain elevator. As a matter of fact, the Captain's tug was 75 feet back from the bow of the Marine Flasher. In the fog the Captain did not have too clear vision. Apparently the first indication the Captain had of any trouble was the blowing of two whistles by the Marine Flasher. This meant to back up. At that time he said he saw a shadow. Then he said the port anchor of the Marine Flasher came down and the ship came to a stop.

There was testimony on the part of respondent that the tug was on the port side of the Marine Flasher; that after the Marine Flasher stopped it went around her port bow to the starboard bow. This would indicate that there was sufficient space between the barge and the stern of the Marine Flasher to make this maneuver. The fault of that argument is, as testified to by the Captain of the tug, the Marine Flasher was at that time backing out.

Respondent calls attention to the fact that there was a log rail just above the damaged top plank and that this was not damaged and, therefore, there could have been no striking by the Marine Flasher.

I do not go along with this contradiction. The log rail was set back from the top plank and further the rake of the stem of the Marine Flasher was such that the top plank could have been hit but the log rail not.

As I see it, the Marine Flasher was lost in the fog. Out of the fog, Pier 13 instead of Pier 16 loomed up. As the sailor witness for respondent testified, " * * * It was all full of fog, and the mate and I were standing as far apart as you * * * and he said, 'What is that? Ain't that something?' And I said, 'Yes, that's a barge there', you know, and he pushed the button * * * And at the same time he told the carpenter to drop anchor, and at the same time he pushed the button and got on the loud speaker, and he told the Captain he was about to run into a barge * * *."

It was an emergency. Everything possible was done to stop the ship and my conclusion is that the Marine Flasher drifted slowly along, taking up the slack in the anchor and into the barge and then pulled back and away. It was not a hard or violent blow.

Libellant is entitled to judgment against respondent for the amount of the damage.

Settle decree on notice.